**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**AT FORT CAMPBELL**
**VIOLATION NUMBERS TM11-6663286 AND TM11-6663287**

5:22-PO-216-LLK

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

JONATHAN MILLS                                                              DEFENDANT

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant Mills' motion to suppress his incriminating Affidavit as given in violation of his *Miranda* rights and as the product of police coercion in the form of threats and promises in violation of Due Process.

For the reasons below, this Opinion CONCLUDES that neither *Miranda* nor Due Process were violated. Accordingly, this Opinion will DENY Mills' motion to suppress his incriminating Affidavit.

**Background facts and procedural history**

On September 18, 2018, Mills began working as a wildlife biologist at Fort Campbell Army Base, with an office in the same building and one floor below U.S. Fish and Wildlife. One of Mills' job duties consisted of depredation hunting of white-tail deer that are injured, lame, or sick. It is undisputed that, on or about December 15, 2018, Mills acted within his scope of employment in killing a certain deer (in a certain area, with his service-issued crossbow) and that Mills had a taxidermist mount the deer head and rack. To the knowledge of the parties and this Opinion, the mounting (as opposed to possession) of the deer did not violate any local, state, or federal law.

Mills stands accused of falsifying a deer harvesting tag on December 15, 2018 and illegally possessing a deer. As detailed below, Mills eventually explained to Fish and Wildlife Officer Corey Jackson that he falsified the deer tag to avoid the "drama" that might ensue if certain members of the hunting community found out about the mount. Specifically, some hunters perceive individuals such as Mills (who

1

was a lead biologist / hunting director at Fort Campbell) as having privileged access to depredation hunting.

On October 24, 2019, after he gave his incriminating Affidavit, Jackson issued two violation notices, charging Mills with Tennessee Code Annotated (TCA) 70-4-116(d)(1) (providing false information on a white-tail deer harvest tag) and TCA 70-4-102a (illegal possession of wildlife (white-tail deer)).

Subsequently, Mills surrendered the mount and crossbow to Jackson.

On August 13, 2021, the undersigned conducted an evidentiary hearing at Fort Campbell, Kentucky, on Mills' motion to suppress his incriminating Affidavit.  Christopher G. Clark represented Mills, and Special Assistant United States Attorney Albert B. Merkel represented the United States.

### Uncontested testimony

At the evidentiary hearing, Jackson testified that he and Mills had a cordial, professional relationship.  Mills visited Jackson's office (on the second floor) for work-related reasons approximately once every other week.

Jackson had arranged for another Fish and Wildlife officer, Jason Bayer, to be present as a witness. Bayer waited upstairs while Jackson went downstairs and asked Mills to accompany him upstairs.

Jackson's office consisted of the entire second floor.  The interview occurred at Jackson's desk. Jackson sat at his desk with his back toward a wall.  Mills sat across from Jackson with his back toward an exit door.  Bayer was sitting at the desk's end cap, to Jackson's right.  The exit door was unlocked.

After some small talk, Jackson introduced Bayer.  Jackson read Mills his *Miranda* rights from a pre-printed card in Bayer's possession.  Mills indicated he understood his rights and wanted to talk.  Jackson told Mills that the exit door behind him was unlocked and that he was free to leave at any time.

In his Affidavit, Mills explained that:  "I shot a deer as part of a depredation removal on Fort Campbell containment.  The deer was a buck and was tagged as a rear area deer TA [training area] 20 to avoid the drama that mounting the deer as a depredation deer might bring."

Mills read and filled in the blanks in the Affidavit's header, which again informed Mills of his

*Miranda* rights:

> I, Jonathan Mills, being first duly sworn (or affirmed) do depose and say as follows:  I have been advised of and understand my right under the Constitution of the United States to refuse to be a witness against myself, and that any statement I make may be used against me.  Knowing this, I make the following statement freely and voluntarily to FWO Corey Jackson 9003, who has identified himself to me as an official of the U.S. Fish and Wildlife Service, United States Department of the Interior.

Mills then gave his written statement.  Finally, Mills signed the Affidavit's footer:

> I have read this statement consisting of 2 page(s), and have initialed all corrections.  I fully understand its entire contents and solemnly swear (or affirm) that it is true and correct to the best of my knowledge and belief.  No threats or promises have been made to obtain this statement.

Jackson and Bayer testified that they did not record the interview although they could have.  Upon cross-examination, Mills questioned Jackson about why the interview was not recorded, and Jackson testified that he intended to bring his voice recorder but left it at home by mistake.  Mills asked Jackson why he did not use his body warrant camera to record the interview, and Jackson explained that (at the time of the interview) he had not been issued a body warrant camera and had not received training in its use.

**Contested testimony**

At the evidentiary hearing and in his post-hearing memorandum, Mills stated that he does not dispute that he was advised of his *Miranda* rights multiple times and that he understood them.  11:55-57.  Rather, Mills indicated that he did not feel free to exercise his *Miranda* rights due to police coercion in the form of threats and promises.  *Id.*

Jackson and Bayer testified that the first discussion of what comes next in terms of going to Mills' chain of command and whether Mills should tell his supervisor was after the formal interview ended, when Jackson signed the incriminating Affidavit.  11:00, 11:37.  Jackson told Mills that it was up to him whether to tell his supervisor.  11:00.  Jackson reassured Mills that Jackson would not say anything, and

3

that, if the supervisor asked Jackson any question concerning the charges, Jackson would refer him to the Fort Campbell Special Assistant United States Attorneys' office.  11:00.  Upon cross examination, Bayer admitted that there may have been some pre-Affidavit discussion concerning retrieval of the mount and crossbow (whether voluntarily or by force).  11:30.

Mills testified that, after small talk and introductions but before Jackson had read him his *Miranda* rights, Jackson showed Mills a picture of a certain deer and asked him if he recognized it.  11:44.  Mills responded that he did recognize the deer and then Jackson told Mills that we can do this the "easy way" or the "hard way," depending on whether Mills decided to "cooperate."  11:45.  By "cooperate," Jackson meant signing the incriminating Affidavit and voluntarily surrendering the mount and crossbow.  The "hard way" meant:  1) going to Mills' supervisor, which would likely cost Mills his job; 2) retrieving the mount and crossbow by force, which would likely cost Mills his apartment and prove embarrassing to him and his family; and 3) cutting Mills no slack regarding calculation of restitution for the deer.  11:45-47, 11:50-51, 11:58-59.

Jackson and Bayer testified that the interview lasted approximately forty-five minutes.  Mills testified that the interview started around 8:00 a.m. and lasted about two and a half hours and that he knew that was the case because he had to miss an important employment appraisal (as a probationary employee), which had been scheduled for that morning (and had to be rescheduled).  11:44.

### Legal standards

The Due Process Clause of the Fourteen Amendment requires that, to be admissible, a confession or other incriminating statement must be voluntarily given.  *Mincey v. Arizona*, 437 U.S. 385 (1978). Determining the voluntariness of an incriminating statement requires careful evaluation of all the facts and circumstances surrounding the interrogation, including "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical

condition and mental health," and whether the suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

*Miranda v. Arizona*, 384 U.S. 436 (1966) held that *Miranda* warnings and a valid waiver of the rights to remain silent and have an attorney present are prerequisites to the admissibility of any confession made by a suspect during custodial interrogation. In other words, a suspect must be read his *Miranda* rights only if he is in custody,[1] being interrogated.

Due Process and *Miranda* impose separate requirements in the sense that a confession must be voluntary regardless of whether the police interview was custodial or noncustodial. *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010). Nevertheless, as explained below, the Sixth Circuit applies the same test for determining whether a suspect voluntarily waived his *Miranda* rights and whether he voluntarily confessed.

Statements made by a suspect in response to interrogation while in police custody are not admissible unless police inform the suspect of his constitutional right against self-incrimination and the suspect validly waived it. *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (citing *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966)). Such a waiver must be made voluntarily and free of any police coercion. *Id.* (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Similarly, a suspect's confession must be made freely, voluntarily and without compulsion or inducement of any sort. *Id.* (citing *Haynes v. Washington*, 373 U.S. 503, 513 (1963)). The test for whether a *Miranda* waiver is voluntary is essentially

---

[1] In this case, Mills probably was **not** in custody in light of Jackson's testimony that he told Mills that the exit door behind him was unlocked and that he was free to leave at any time. *See United States v. Martinez*, 795 F. App'x 367, 371 (6th Cir. 2019) ("Whether investigators inform a suspect that he is free to leave or to refuse to answer questions is the most important consideration in the *Miranda* custody analysis."). It is, however, not of case dispositive significance that Mills was probably not in custody because it is undisputed that Jackson read Mills his *Miranda* rights. The question before the Court is whether Mills voluntarily waived his *Miranda* rights and voluntarily confessed.

the same as the test for whether the confession was voluntarily given. *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986)).

A suspect's *Miranda* waiver and confession are deemed involuntary (and subject to suppression) due to police coercion if: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; (iii) and the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statements." *Id.* (citing *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)). These are the so-called *Mahan* requirements. The United States bears the burden of proving by a preponderance of the evidence that at least one of the three *Mahan* requirements is absent. *Id.*

In determining whether the United States has proven absence of first *Mahan* requirement, courts should consider that police threats of prosecution and promises of leniency can be objectively coercive. *United States v. Johnson*, 351 F.3d 254, 261-62 (6th Cir. 2003).[2] To be objectively coercive, however, the threats must be unfounded in law or fact and the promises must be broken or illusory. *Id.* at 262-63. An illusory promise is a statement in the form of a promise but lacking its substance in that it does not actually commit the police to undertake or refrain from any particular course of action. *Id.* at n.1.

In determining whether the United States has proven absence of the third *Mahan* requirement, courts should consider as an important factor the temporal proximity between the coercive conduct and

---

[2] In *United States v. Johnson*, 351 F.3d 254 (6th Cir. 2003), police threatened to arrest Johnson's half-sister, Tracy, and the Sixth Circuit had to determine whether this resulted in police coercion, which rendered Johnson's confession involuntary. "When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." *Id.* at 260. "[T]he question [of] whether the threat to prosecute [i.e., arrest] Tracy was coercive turns on the issue of whether the threat could have been lawfully executed." *Id.* at 263. "Whether the police could have lawfully arrested Tracy in turn depends on whether the investigating officers had probable cause to suspect Tracy of criminal involvement." *Id.* Johnson affirmed the district court's denial of Johnson's motion to suppress because there was probable cause to suspect Tracy's involvement and because the promise not to prosecute Tracy was neither illusory nor broken.

the incriminating statement. *United States v. Collado-Rivera*, 759 F. App'x 455, 461 (6th Cir. 2019) (citing *United States v. Brown*, 557 F.2d 541 (6th Cir. 1977) and *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993)).

### Threats of going to Mills' supervisor

This Opinion finds to be credible the testimony of Jackson and Bayer that the first discussion of what comes next in terms of going to Mills' chain of command and whether Mills should tell his supervisor was after the formal interview ended, when Jackson signed the incriminating Affidavit. 11:00, 11:37. To the extent Mills testified to the contrary, the testimony is incredible. It follows that any threats of going to Mills' supervisor was not (per the third *Mahan* requirement) the "the crucial motivating factor in [Mills'] decision to offer the statements." *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (citing *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999)). Therefore, Mills voluntarily waived his *Miranda* rights and voluntarily confessed notwithstanding any threat to go to Mills' supervisor.

Even if Jackson did, in fact, threaten to go to Mills' supervisor during the interview, the threat was still not "the crucial motivating factor in [Mills'] decision to offer the statements." *Id.* This is because, even without the threats, it is more likely than not that Mills would have confessed to avoid retrieval of the mount and crossbow by force and to obtain leniency regarding calculation of restitution for the deer.[3]

### Threats of retrieving the mount and crossbow by force

Even if Jackson threatened to retrieve the mount and crossbow by force during the interview, the threat was not "objectively coercive" under the first *Mahan* requirement because it was founded in law

---

[3] This Opinion declines to find that any threat to go to Mills' supervisor was not (per the first *Mahan* requirement) "objectively coercive" because such threat would have been founded in law or fact. *United States v. Johnson*, 351 F.3d 254, 261-62 (6th Cir. 2003). This is because it is unclear whether Jackson could have lawfully gone to Mills' supervisor. Mills testified that he had to hire a separate attorney to represent him in a pending employment case. 11:54. Jackson testified that he told Mills that, if Mills' supervisor asked him any question concerning the charges, he would refer the supervisor to the Fort Campbell Special Assistant United States Attorneys' Office. 11:00.

or fact.  *United States v. Johnson*, 351 F.3d 254, 261-62 (6th Cir. 2003).  There is no reason apparent why Jackson could not have obtained a warrant to search Mills' apartment and seize an illegally possessed deer (upon a showing of probable cause that the deer would be located there).

To the extent Mills testified that Jackson and/or Bayer explicitly threatened to conduct a special weapons and tactics (SWAT)-team style raid on Mills' apartment, the testimony is incredible.  Bayer testified that he is, in fact, a leader of Fish and Wildlife Special Operations Response Team (SORT) and, upon cross examination, admitted that Mills would have had no reason to know that unless it was mentioned during the interview.  11:30.  Bayer testified that SORT is typically used in high profile cases involving multiple agencies and that it would have been inappropriate to use SORT to retrieve the mount and crossbow.  11:35.[4]

At worst, Jackson and/or Bayer allowed Mills to remain confused that a SWAT-team style raid might be in his future if he did not cooperate.   Even if there were evidence of affirmative misrepresentation or intent to deceive, the crucial element would remain whether there was police coercion.  *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).  There is nothing inherently wrong with efforts by police to create a favorable climate for a confession, and neither confusion, emotionalism, nor trickery will alone invalidate a confession.  *Ledbetter v. Edwards*, 35 F.3d 1062, 1069 (6th Cir. 1994).  Police are not required to supply a suspect with every bit of information they possess.  *United States v. Glover*, No. 3:10CR40/MCR, 2010 WL 11526871, at *8 (N.D. Fla. July 27, 2010).  Trickery or deceit is prohibited only to the extent it deprives the suspect of knowledge essential to his ability to understand the nature of

---

[4] Consistently with Bayer's testimony, it likely would have violated Mills' Fourth Amendment rights to use SORT to retrieve the mount and crossbow.  The decision to deploy a SWAT team to execute a warrant necessarily involves the decision to make an overwhelming show of force -- far greater force than that normally applied in police encounters with citizens.  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001).  In determining whether a confession was voluntarily given, courts should consider any threat to deploy a SWAT team.  *United States v. Killen*, 729 F. App'x 703 (11th Cir. 2018).  A decision to deploy a SWAT team was held to be objectively unreasonable where the purpose was to investigate "petty, non-violent" theft by a minor and police knew that "law-abiding citizens" would likely be present.  *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 859 (N.D. Ohio 2011).  Like Rush, Mills was being investigated only for misdemeanor violations, and his family likely would have been present during any SWAT-team style raid.

his rights and the consequences of abandoning them.  *United States v. Farley*, 607 F.3d 1294, 1327 (11th Cir. 2010).

Even if Jackson threatened to retrieve the mount and crossbow by force during the interview, the threat was not (per the third *Mahan* requirement) the "the crucial motivating factor in [Mills'] decision to offer the statements." *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (citing *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999)).  This is because, even without the threat, it is more likely than not that Mills would have confessed to avoid the possibility of Jackson's going lawfully to his supervisor and to obtain leniency regarding calculation of restitution for the deer.

### Threats of cutting Mills no slack regarding calculation of restitution for the deer

It is undisputed that the fine that would be applicable in this case for illegal possession of a deer would be based on certain calculations made by Fish and Wildlife and that these calculations are not well understood outside of Fish and Wildlife.  At the evidentiary hearing and in his pre- and post-hearing memoranda, Mills indicated that, in light of the type of deer and number of antler points, the restitution could be as high as $11,000.00.  11:47.  Mills testified that Jackson told him that, if he cooperated, he would recommend approximately $1,000.00 (plus the lowest criminal charge).  11:49.

To be "objectively coercive" under the first *Mahan* requirement, promises must be broken or illusory. *United States v. Johnson*, 351 F.3d 254, 262-63 (6th Cir. 2003).  An illusory promise is a statement in the form of a promise but lacking its substance in that it does not actually commit the police to undertake or refrain from any particular course of action.  *Id.* at n.1.  Even if Jackson promised Mills leniency regarding calculation of restitution, the promise was neither illusory nor has it been broken.

Even if such promise was objectively coercive, it was not (per the third *Mahan* requirement) the "the crucial motivating factor in the defendant's decision to offer the statements." *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (citing *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999)). This is because, even without the promise, it is more likely than not that Plaintiff would have confessed

9

to avoid the possibility of Jackson's going lawfully to his supervisor and to avoid Jackson's obtaining a

search warrant to retrieve the mount and crossbow by force.

**ORDER**

For the foregoing reasons, Mills' motion to suppress his incriminating Affidavit is hereby DENIED.

April 1, 2022

**ENTERED**

JAMES J. VILT JR., CLERK

4/1/2022

U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

Lanny King, Magistrate Judge
United States District Court